IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

**EOD**
02/14/2012

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **ACP AMERI-TECH** | § | |
| **ACQUISITION, LLC** | § | Case No. 09-90082 |
| d/b/a Ameri-Tech Building Systems | § | |
| xx-xxx4482 | § | |
| | § | |
| Debtor | § | Chapter 7 |

| | | |
|---|---|---|
| DANIEL JACOB GOLDBERG, | § | |
| Chapter 7 Trustee | § | |
| | § | |
| Plaintiff | § | |
| v. | § | Adversary No. 10-9029 |
| | § | |
| GRAYBAR ELECTRIC CO., INC. | § | |
| | § | |
| | § | |
| Defendant | § | |

## MEMORANDUM OF DECISION[1]
## GRANTING IN PART AND DENYING IN PART
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

ON THIS DATE the Court considered the Motion for Summary Judgment (the

"Motion") filed by the Plaintiff, Daniel Jacob Goldberg (the "Trustee"), in his capacity as

the Chapter 7 Trustee for the Bankruptcy Estate of ACP Ameri-Tech Acquisition, LLC

("Ameri-Tech") in the above-referenced adversary proceeding, the response in opposition

to the Motion subsequently filed by the Defendant, Graybar Electric Co., Inc.

---

[1] This Memorandum of Decision is not designated for publication and shall not be considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case or as to other evidentiary doctrines applicable to the specific parties in this proceeding.

("Defendant"), and the Trustee's reply.  The complaint in this action alleges that the Trustee is entitled to the return of two allegedly preferential payments made by Ameri-Tech to the Defendant in late 2008 and early 2009.  The Defendant answered Trustee's Complaint with denials and affirmative defenses and that answer has been amended on two occasions with leave of court.  Based upon the Court's consideration of the Motion,[2] the memoranda in support and opposition thereto, and the proper summary judgment evidence, and for the reasons stated in this Memorandum of Decision, the Court concludes that the Trustee's Motion for Summary Judgment should be granted in part and denied in part.[3]

## Discussion

*Standard for Summary Judgment*

The Trustee brings his Motion for Summary Judgment in the adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7056.  That rule incorporates Federal Rule of Civil Procedure 56 which provides that summary judgment shall be rendered "if

---

[2]  This Court has jurisdiction to consider the complaint pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157(a).  The Court has the authority to enter a final judgment in this adversary proceeding since it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(E), (F), and (O).

[3]  Notwithstanding the fact that the United States District Court for the Eastern District of Texas has previously determined in the context of a motion to withdraw the reference that the Defendant has preserved a Seventh Amendment right to a jury trial, this Court is empowered to rule upon this summary judgment motion.  *Shindler v. Floyd (In re Rodriguez)*, 95 F.3d 54, 1996 WL 460144 at *4 (5th Cir., Aug. 2, 1996) [holding that right to a jury trial under 7th Amendment does not apply "where a litigant cannot survive pretrial motions for judgment as a matter of law"]; *McFarland v. Leyh*, 40 F.3d 763, 772-73 (5th Cir. 1994) [in bankruptcy proceeding no right to jury trial arises until a jury issue is before the court]; *King v. Fidelity Nat. Bank of Baton Rouge*, 712 F.2d 188, 192-93 (5th Cir. 1983);  *Hayes v. Royala, Inc.*, 180 B.R. 476 (E.D. Tex. 1995).

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986), *quoting* Fed. R. Civ. P. 56(c).[4]

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, identifying those portions of the "pleadings, depositions, answers to interrogatories, and affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The manner in which the necessary summary judgment showing can be made depends upon which party will bear the burden of persuasion at trial. If, as in this case, the burden of persuasion at trial is on the moving party, "that party must support its motion with credible evidence--using any of the materials specified in Rule 56(c)--that would entitle it to a directed verdict if not controverted at trial." *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting); *Timmer v. Michigan Dept. of Commerce*, 104 F.3d 833, 843 (6th Cir. 1997); *Thom v. State Farm Lloyds*, 10 F.Supp.2d 693, 698 (S.D. Tex. 1997).

If the motion is supported by a *prima facie* showing that the moving party is entitled to judgment as a matter of law, a party opposing the motion may not rest upon the mere allegations or denials in its pleadings, but rather must demonstrate in specific responsive pleadings the existence of specific facts constituting a genuine issue of

---

[4] Pursuant to the scheduling order issued in this adversary proceeding, motions for summary judgment are required to comply in format and content with Local District Court Rule CV-56 and such motions shall be decided under the procedures stated therein.

material fact for which a trial is necessary. *Anderson,* 477 U.S. at 248-49 (*citing* FED. R. CIV. P. 56(e)). The substantive law will identify which facts are material. *Id.*

To determine whether summary judgment is appropriate, the record presented is viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, if the evidence demonstrating the need for trial "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. Thus, a non-movant must show more than a "mere disagreement" between the parties, *Calpetco 1981 v. Marshall Exploration, Inc.*, 989 F.2d 1408, 1413 (5th Cir. 1993), or that there is merely "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. Essentially, if a non-movant fails to set forth specific facts that present a triable issue, its claims should not survive summary judgment. *Giles v. Gen. Elec. Co.,* 245 F.3d 474, 494 (5th Cir. 2001).

Additionally, as to the Defendant's affirmative defenses on which it carries the burden of proof, a "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is entitled to a judgment as a matter of law because the nonmoving party asserting an affirmative defense has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof." *Celotex*, 477 U.S. at 322-23 (internal quotations omitted) (*citing Anderson*, 477 U.S. at 250).

Thus, in this case, the Trustee bears the burden as to the existence of a preferential transfer, while the Defendant bears the burden of proof on its affirmative defenses. As such, the Trustee is entitled to the entry of a summary judgment only if there exists no genuine issue of material fact as to each element of a preferential transfer, and if the Defendant has failed to produce sufficient evidence to create a factual issue regarding its own affirmative defenses.

*Analysis*

A plaintiff must prove six elements to successfully establish and recover a preferential transfer under 11 U.S.C. § 547(b). Those elements are: (1) a transfer of an interest of the debtor in property; (2) to or for the benefit of a creditor; (3) for or on account of antecedent debt; (4) made while the debtor was insolvent; (5) made on or within 90 days before the date of the filing of the bankruptcy petition; and (6) that enabled the creditor to receive more than it would otherwise have received if the transfer had not been made and the case had proceeded under Chapter 7. 11 U.S.C. § 547(b); *Union Bank v. Wolas*, 502 U.S. 151, 154-55 (1991). The Defendant, as the alleged recipient of a preferential transfer, challenged the grounds underlying Trustee's Motion only upon element six – whether the Defendant received more through the transfer that it would otherwise would have in a Chapter 7 liquidation.[5] Defendant did not challenge

---

[5] In tying each of the Defendant's allegations to a statutory element of a § 547(b) preferential transfer, the Court has generously construed the arguments presented in Defendant's response.

elements one through five and, upon review, the Court determines that the summary judgment evidence establishes that there is no material factual dispute that two transfers of an interest of the Debtor in property — totaling $65,324.27 —  were made to the Defendant on account of antecedent debts[6] and such transfers occurred within the 90-day period prior to bankruptcy, at a time when the Debtor was insolvent.[7]

As to the sixth and final element, the Defendant contends that it did not receive more by its receipt of the transfers than it would have otherwise received in a Chapter 7 liquidation because, if the transfers had not taken place, it could have perfected and enforced lien rights against the properties on which its materials were used.  The Defendant essentially argues that a payment received in satisfaction of an unperfected mechanic's or materialman's lien cannot be a preference because it does not diminish the bankruptcy estate.  As stated in *The Official Comm. of Unsecured Creditors of 360Networks (USA), Inc. v. AAF-McQuay, Inc. (In re 360Networks (USA), Inc.)*, 327 B.R. 187, 193 (Bankr. S.D.N.Y. 2005), "payments made to the holder of an inchoate statutory

---

[6] A debt is "antecedent" for purposes of § 547(b) if it was incurred before the alleged preferential transfer.  *Baker Hughes Oilfield Op. v. Cage (In re Ramba, Inc.)*, 416 F.3d 394, 399 (5th Cir. 2005).

[7] The Bankruptcy Code defines insolvency as a "financial condition such that the sum of [the] entity's debts is greater than all of [its] property, at a fair valuation ..." 11 U.S.C. § 101(32).  Under § 547, "the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition." 11 U.S.C. § 547(f).  The Court notes from its own docket and from Trustee's Motion that the Debtor filed its voluntary petition for relief under Chapter 11 on or about March 13, 2009.  Based on that filing date, any transfers that occurred on or after December 13, 2008 fall within that presumed period of insolvency.  The two transfers in this case fall within that period.

lien during the preference period are not avoidable where, at the time of the payment, the

lienholder: i) remained eligible to perfect the lien pursuant to relevant state law, and ii)

such perfection would not otherwise have been avoidable under the Bankruptcy Code."

This "inchoate lien" defense to §547(b)(5) recognizes that since a holder of inchoate lien

rights cannot perfect a lien after accepting payment in satisfaction of the underlying

claim, a refusal to protect such transfers from avoidance exposes holders of such inchoate

rights to "an unreasonable Hobson's choice between accepting payment (with the

attendant risk that it could be avoided if the payor enters bankruptcy) or taking the

commercially unreasonable step of declining payment in order to perfect an inchoate

statutory lien." *Id.* at 192. This preference immunity has been recognized by a number of

courts[8] and, although the Fifth Circuit has not directly addressed the subject, it has

endorsed its underlying premise that, in constructing the hypothetical Chapter 7 case

mandated by §547(b)(5), in which the transfers never took place, a court should presume

that all parties will act in a commercially reasonable and businesslike manner to protect

its own interests. *Lowe v. Palmetco, Inc. (In re N.A. Flash Found., Inc.)*, 298 Fed. Appx.

---

[8]  In addition to the *360 Networks, Inc.* decision cited above*, see, e.g., Ricotta v. Burns Coal & Bldg. Supply Co.*, 264 F.2d 749, 750 (2d Cir. 1959); *Bryant v. JCOR Mechanical, Inc.*, 336 B.R. 809 (B.A.P. 10th Cir. 2006); *Schnittjer v. Pippert (In re Carney)*, 396 B.R. 22 (Bankr. N.D. Iowa 2008); *Larsen v. Hopkins (In re Larsen)*, 2008 WL 4498890 (Bankr. D. Idaho, Aug. 14, 2008); *Golfview Dev. Center, Inc. v. All-Tech Decorating Co. (In re Golfview Developmental Center, Inc.)*, 309 B.R. 758 (Bankr. N.D. Ill. 2004).

355, 359 (5th Cir. 2008).[9]  In this context, that would mean acceptance of the premise that, in the absence of payment in the Chapter 7 hypothetical, the Defendant would have perfected its inchoate lien.

While the Court might be willing to accept such a legal theory, the Defendant has offered no summary judgment evidence that it was the holder of any inchoate lien rights. Though it claims that it produced special products for Ameri-Tech and it made generic references to Ameri-Tech's activities in various locales, the Defendant offered no specific proof of any kind that any particular product encompassed by the underlying invoices were tied to any specific project in any specific location.[10]  Without such information, the Defendant cannot raise a genuine issue of material fact regarding the existence of an inchoate lien at the time of payment.

The Defendant virtually concedes that point but asserts that, though it failed to obtain and maintain such information during its business relationship with Ameri-Tech, the Trustee should be precluded from recovery as a punishment for spoliation of evidence because he could not produce Ameri-Tech documents to indicate where and for whom the

---

[9]  The *Flash Foundation* decision was based upon a construction trust fund theory rather than a materialman's lien theory.

[10]  Since the Defendant apparently did not track the use of its products by Ameri-Tech, and given that Ameri-Tech engaged in projects in numerous states as well as abroad, the presumption expressed in *Flash Foundation* might be precluded here since it is extremely doubtful that the Defendant could have identified the forum and processes needed for the timely protection of its interests. In this circumstance, the Court need not reach that issue.

Defendant's materials had been used.

Under the spoliation doctrine, a trier of fact may draw an adverse inference "that a party who intentionally destroys important evidence in bad faith did so because the contents of those documents were unfavorable to that party." *Whitt v. Stephens County*, 529 F.3d 278, 284 (5th Cir. 2008) (*citing Russell v. Univ. of Tex.*, 234 Fed. Appx.195, 207 (5th Cir.2007)).  The conduct necessary to justify such a sanction must rise to the level of bad faith.  *Ford v. Potter*, 354 Fed. Appx. 28, 33 (5th Cir. 2009) (citing *King v. Ill. Cent. R.R.*, 337 F.3d 550, 556 (5th Cir. 2003)).  "Mere negligence is not enough, for it does not sustain an inference of consciousness of a weak case." *White v. Wal-Mart Stores East, L.P.*, 169 Fed. Appx. 850 (5th Cir. 2006) (*citing Vick v. Tex. Employment Comm'n*, 514 F.2d 734, 737 (5th Cir.1975)).

The Defendant has failed to establish any ground for the assessment of such a sanction.  First of all, the Defendant's request for a spoliation sanction is not based upon any evidence regarding the scope, nor even the existence, of the "missing" documents. The spoliation request is initially supported by the affidavit of the Defendant's director of finance, Darryl Bain, who states that "[U]pon information and belief, Ameri-Tech possessed documents that identified the real property and mineral fields that Graybar's

materials improved, however, Ameri-Tech failed to retain these documents."[11]

Statements made "upon information and belief" are not based upon personal knowledge and do not constitute proper summary judgment evidence. *de la O v. Housing Authority of El Paso,* 417 F.3d 495, 502 (5th Cir. 2005). "If an affiant expressly states in [his] affidavit that a certain statement was made on information and belief, such statement should be stricken as not based on personal knowledge." *Bolen v. Dengel*, 340 F.3d 300, 313 (5th Cir. 2003).

The request further rests upon correspondence from the attorney for the principal of the defunct debtor corporation who, in response to a request for Ameri-Tech's project file for the projects in which Graybar materials were used,[12] answered as follows:

> I am told by my client that all of the Graybar Electric Company, Inc. *invoices,* whether paid or unpaid, were given to Mr. Goldberg, the trustee. I am also told that due to the nature of the services provided by your client, *locating a particular project is not possible*. The trustee took possession of many of the original records and we believe that included everything related to your adversary proceeding.[13]

Finally, the request is based upon the response by the Trustee to the Defendant's interrogatory inquiring about the identification of the property into which its materials

---

[11] Affidavit of Darryl Bain supporting Defendant's Response to Plaintiff's Motion for Summary Judgment (the "Defendant's Response").

[12] Exhibit H to the Defendant's Response.

[13] Exhibit I to the Defendant's Response (emphasis added).

were used.[14]  The Trustee's response is forthright and direct:

> Response:  The Trustee is not able to identify any module, rig, equipment or other property into which the materials described in Graybar Electric Company's invoices to the Debtor listed in Schedule A were installed, or were delivered for such installation or use.  On December 7, 2010, the Trustee delivered to counsel for Graybar Electric Company copies of all of the Debtor's records which are contained in a paid invoices file and in an unpaid invoices file, labeled "Graybar Electric Co., Inc."  These records contain purchase orders, packing lists, invoices, freight bills, copies of the debtor's checks which paid the invoices, and check stubs which list the invoices paid by the checks, and are approximately 2 and ½ inches thick.  These records are all of the Debtor's records concerning transactions with Graybar Electric Company that have come into the possession of the Trustee.  *These records simply show orders, sales and delivery of goods on open account, and do not contain any information which would identify any modules, rigs or equipment or other property that the electrical components which Graybar Electric sold to the Debtor were intended for or used upon.*[15]

The correspondence with the attorney for the Debtor's principal officer suggests that they may have never been a "project file" or other means through which the Defendant's materials were retained by the Debtor and could be traced.  The Defendant's response simply assumes such was the case.  In addition to that initial assumption, the Defendant has presented no evidence that the Trustee ever came into possession of any such documents.  It certainly has not presented evidence that the Trustee is responsible for the <u>intentional</u> destruction of those presumed documents.  The Defendant has wholly failed to demonstrate the existence of bad faith by the Trustee in this circumstance and

---

[14]  Exhibit F to the Defendant's Response.

[15]  *Id.* (emphasis added).

this bankruptcy estate should not be denied an opportunity to pursue the avoidance of preferential transfers solely upon the presentation of a defendant's biased surmises and suspicions.  Since the Defendant has failed to tender any other evidence to contradict the Trustee's sworn assertion that the Defendant would not have received a full 100% payment of a claim of $65,324.27 from the Chapter 7 estate distributions, the Trustee has successfully demonstrated that there is no genuine issue of material fact as to this sixth element. Hence, the Trustee is entitled, at a minimum, to a partial summary judgment that each element of a preferential transfer has been established in this case.

Having determined that the Trustee has satisfied his burden of demonstrating that no genuine issue of material fact exists as to each element of a preferential transfer, the two transfers of the Debtor's property received by the Defendant are avoidable as a matter of law unless a factual issue is raised regarding one of the affirmative defenses alleged in Defendant's Answer.  As was outlined earlier, "[w]here the burden at trial rests on the non-movant for summary judgment, the movant must merely demonstrate an absence of evidence in the summary judgment record for the non-movant's case." *Rand Energy Co. v. Strata Directional Technology, Inc. (In re Rand Energy Co.),* 259 B.R. 274, 278 (Bankr. N.D. Tex. 2001) (*citing Mississippi River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000)).

The Defendant in its Second Amended Answer asserted the following defenses:

(1)     estoppel;
(2)     the trust fund doctrine under Louisiana law;
(3)     the ordinary course of business defense under §547(c)(2);
(4)     the contemporaneous exchange for new value defense under §547(c)(1) arising
        from an extension of credit and from its forbearance and waiver of lien
        rights;
(5)     a transfer fixing a statutory lien under §547(c)(6); and
(6)     setoff and recoupment.

The Defendant fails to identify in its answer what type of estoppel it is seeking to invoke

as an affirmative defense[16] or what facts would support such an invocation.[17]  What is

clear is that the Defendant failed to submit proper summary judgment evidence to create a

genuine issue of material fact that the Trustee is somehow estopped from pursuing a

preference recovery against the Defendant on behalf of the creditors of the estate.  Thus,

summary judgment is rendered for the Trustee on the Defendant's affirmative defense of

estoppel.

Similarly, given the failure of the Defendant to establish the requisite foundation

for a spoliation sanction as discussed previously, the Defendant has failed to present

---

[16]  Estoppel is an enumerated affirmative defense under Fed. R. Civ. P. 8(c) as incorporated into
this proceeding by Fed. R. Bankr. P. 7008.

[17]  Generically, equitable estoppel under Texas law requires a showing of: (1) a false
representation or concealment of material facts made with the intent that another party act on the false
representation or silence, (2) the false representation or concealment of material facts was made by a party
with knowledge of the facts, (3) the party to whom the representation was made or from whom facts were
concealed was without knowledge or the means of knowledge of the real facts, and (4) detrimental
reliance. *Steubner Realty 19, Ltd. v. Cravens Road 88, Ltd.*, 817 S.W.2d 160, 163 (Tex. App. – Hous.
[14th Dist.] 1991, no writ) (*citing Gulbenkian v. Penn*, 151 Tex. 412, 252 S.W.2d 929, 932 (1952)).
Quasi estoppel precludes a party, with knowledge of the facts, from taking a position inconsistent with his
or her former position to the disadvantage or injury of another.  *Id.*  Unlike equitable estoppel, quasi
estoppel requires no showing of a false representation or detrimental reliance.  *Id.*at 164.

**-13-**

summary judgment evidence to establish a fact issue regarding its defense that the payments tendered to it by the Debtor constituted trust funds pursuant to Louisiana law. The Defendant has failed to cite any statute that would impose a trust fund designation upon the designated payments. It tendered only general statements about the availability of lien privileges provided under the Louisiana Private Works Act (which requires strict compliance). There is no evidence tendered by the Defendant to create a fact issue that the funds tendered by the Debtor to the Defendant constituted trust funds. Since the Defendant, as a non-moving party asserting an affirmative defense, has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the Trustee is entitled to judgment as a matter of law on the Defendant's trust fund defense. *Celotex*, 477 U.S. at 322-23.

The Defendant further claims in its answer that the two transfers are protected from recovery by the Trustee under 11 U.S.C. §547(c)(1) because the payments constituted a contemporaneous exchange for new value given to the Debtor as intended by the parties.[18] To prevail on its affirmative defense, the Defendant would be required to demonstrate "intent, contemporaneousness and new value." *Southmark Corp. v. Schulte, Roth & Zabel (In re Southmark Corp.)*, 2000 WL 1741550, at *3 (5th Cir. 2000). In

---

[18] "New value" is defined by §547(a)(2) as:

> money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation[.]

**-14-**

response to the Trustee's summary judgment evidence that no new value was given and that the shortest period of payment for any invoice covered by the two transfers was 112 days and the longest was 145 days, the Defendant offered nothing on the parties' intent and no conflicting evidence to establish a fact issue regarding the contemporaneous nature of the transaction, or the nature of the new value otherwise supplied.  Though the inquiry into whether a transfer was part of a "substantially contemporaneous exchange" is a flexible one,[19] it cannot be distended to such a degree in the absence of other facts.

Further, the Defendant contends that §547(c)(1) protects the transfers from avoidance because the Defendant's forbearance of its lien rights within the applicable time period constituted new value to the Debtor.   As stated earlier, the Defendant has failed to tender summary judgment evidence of any property upon which it could have filed a lien and, even if it could have, its forbearance of its right to assert, perfect or enforce a lien does not constitute new value for the purposes of the preference statute. *American Bank v. Leasing Svc. Corp. (In re Air Conditioning, Inc. of Stuart)*, 845 F.2d 293, 298 (11th Cir. 1988) ["Forbearance from exercising pre-existing rights does not constitute new value under section 547(a)(2)."]; *Cimmaron Oil Co., Inc. v. Cameron Consultants, Inc*., 71 B.R. 1005, 1009 (N.D. Tex.1987) ["This court concludes that forgoing, by operation of law, the right to perfect a lien is not the exchanging of "new value" with the debtor because it is not money or money's worth in goods, services, or

---

[19] See *Moser v. JPMorgan Chase Bank, N.A. (In re Brown),* 375 B.R. 348, 354 (Bankr. E.D. Tex. 2007).  That flexibility takes into account not only the length of the delay but also factors such as the reason for delay, the nature of the transaction, the intentions of the parties, and the risk of fraud.

new credit, nor is it a release of property by the lienor that has previously been transferred to the lienor."].  Accordingly, summary judgment on the Defendant's affirmative defenses under §547(c)(1) must be rendered for the Trustee.

Similarly, the Defendant asserts that its forbearance of its lien rights upon receipt of each of the transfers from the Debtor triggers protection from avoidance under §547(c)(6) as one constituting the fixing of an unavoidable statutory lien.  However, there is no dispute that there was no lien actually fixed upon any property.  The Fifth Circuit has stated in this context that the transfer itself must constitute the fixing of the lien per the plain language of the statute in order for the §547(c)(6) affirmative defense to apply and has specifically rejected the concept that any transfer made in satisfaction of a debt that eliminates the necessity to exercise a lien right qualifies for protection under §547(c)(6).  *Baker Hughes Oilfield Operations, Inc. v. Cage (In re Ramba, Inc.)*, 416 F.3d 394, 400-01 (5th Cir. 2005).  Thus, any forbearance by the Defendant cannot constitute a "fixing" of a statutory lien as a matter of law and the Trustee is entitled to summary judgment on the Defendant's affirmative defense under §547(c)(6).

Finally, the Court addresses the Defendant's contention that the two transfers are protected from recovery by the Trustee under 11 U.S.C. §547(c)(2).[20]  This defense "is

---

[20]  Section 547(c)(2) saves otherwise preferential transfers —

(2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was —

(A) made in the ordinary course of business or financial affairs of the

-16-

intended to protect recurring, customary credit transactions" that are incurred and paid in the preference period for the purpose of encouraging the continuation of business by suppliers with a person seeking to avoid a bankruptcy filing. *G.H. Leidenheimer Baking Co. v. Sharp (In re SGSM Acquisition Co., LLC)*, 439 F.3d 233, 240 (5th Cir. 2006); 5 COLLIER ON BANKRUPTCY ¶ 547.04[2] at p.547-51 (16th ed. 2010). As an affirmative defense, the burden of proof rests upon the Defendant and "[w]hether or not a payment is made in the ordinary course of business and according to ordinary business terms is a factual determination. . . ." *Braniff Airways, Inc. v. Midwest Corp*., 873 F.2d 805, 806 (5th Cir. 1989); *SGSM Acquisition,* 439 F.3d at 240; *Kaye v. Agripool, Inc. (In re Murray, Inc.)*, 392 B.R. 288, 294 (B.A.P. 6th Cir. 2008). Therefore, "the general rule is that the ordinary course of business defense cannot be determined on a motion for summary judgment." *In re Ice Cream Liquidation, Inc. v. Niagara Mohawk Power Co. (In re Ice Cream Liquidation, Inc.)*, 320 B.R. 242, 250 (Bankr. D. Conn. 2005).

Step one in the consideration of this affirmative defense is whether the debt itself was incurred in the ordinary course of the business or financial affairs of the debtor and the transferee. *Wild West World, L.L.C. v. Village Charters, Inc. (In re Wild West World, L.L.C.)*, 2009 WL 348544 at *4 (Bankr. D. Kan., Feb. 10, 2009). The fulfillment of this initial threshold has been agreed upon by the parties in this case. Since that foundation has been established, the transactions occurring in the preference period must be

---

debtor and the transferee; or

(B) made according to ordinary business terms.

examined by a subjective test [§547(c)(2)(A)] and by an objective test [§547(c)(2)(B)].
*SGSM Acquisition,* 439 F.3d at 240.  Generically speaking, the subjective test examines
whether the transfers at issue were "ordinary as between the parties" and the objective test
examines whether the transfers were "ordinary in the industry." *Payne v. Clarendon Nat'l
Ins. Co. (In re Sunset Sales, Inc.),* 220 B.R. 1005, 1020 (B.A.P. 10th Cir. 1998).  After the
adoption of the Bankruptcy Abuse Prevention and Consumer Protection Act in 2005, the
transaction must satisfy either of the tests, but not both, in order to be protected from
avoidance as a preferential transfer.[21]

*Subjective Prong - §547(c)(2)(A)*

"There is no precise legal test for evaluating whether a transfer complies with the
subjective prong" and the analysis in that regard is fact-specific concerning the parties'
conduct before and during the preference period.  *Sommers v. Concrete Straightline
Sawing, LLC (In re Contractor Technology, Ltd.)*, 2007 WL 4206211 at *2 (Bankr. S.D.
Tex., Nov. 26, 2007).  The analysis centers upon "whether the transactions between the
debtor and the creditor before and during the ninety-day period are consistent." *Lightfoot,
Lightfoot v. Amelia Maritime Svcs. Inc. (In re Sea Bridge Marine, Inc.),* 412 B.R. 868,
872 (Bankr. E.D. La. 2008). That generally requires a defendant to establish a "baseline

---

[21]   The most-cited Fifth Circuit cases in this regard, *SGSM* and *Gulf City, supra* were decided
prior to the enactment of BAPCPA.  Once BAPCPA amended the ordinary course defense in § 547(c)(2)
to read the elements of the defense in the alternative, rather than the conjunctive, the portion of those
opinions requiring satisfaction of both the subjective and objective tests is no longer applicable. *See
Caillouet v. First Bank & Trust (In re Entringer Bakeries, Inc.)*, 548 F.3d 344, 351 n.9 (5th Cir. 2008).

of dealing" between the parties over a historical period and courts generally consider four primary factors in connection with that data to determine the consistency of the conduct during that time frame:  (1) the length of time the parties were engaged in the transaction in issue; (2) whether the amount or form of tender differed from past practices; (3) whether the debtor or creditor engaged in any unusual collection or payment activity; and (4) the circumstances under which the payment was made. 5 COLLIER ON BANKRUPTCY ¶547.04[2][a][ii] at p.547-54 (16th ed. 2010).

The parties have each submitted summary judgment evidence regarding the transactions that occurred between the Debtor and the Defendant prior to and during the preference period and the time periods for payment relating thereto.  The Trustee urges adoption of his "days to pay" analysis and the issuance of judgment in his favor as a matter of law because the dates and amounts of the invoices and subsequent payments are established and "the only dispute is as to the interpretation of these undisputed facts."[22] However, that interpretation is a factual determination.  It is important to remember why the defense exists at all.  It is seeking to discern whether the referenced payments made by the debtor in the final days prior to its bankruptcy were transmitted in the same manner that had generally existed between the parties in the earlier pre-preference period or whether they "represent collusive arrangements designed to favor the creditor during the debtor's slide into bankruptcy."  *Gulf City*, 296 F.3d at 367.  While the data sheds helpful

---

[22] *Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Summary Judgment* filed on September 12, 2011 (dkt #33) at p. 14.

light on that determination, the defense cannot be reduced to a mathematical equation.  It

is broader and more comprehensive than that.  While the Trustee may ultimately prevail

at trial with his "days to pay" analysis, he cannot prevail as a matter of law.  In evaluating

the summary judgment evidence submitted on the subjective prong of §547(c)(2), the

Court concludes that a genuine issue of material fact exists with regard to whether the

transfers were consistent with the ordinary course of the relationship between the Debtor

and the Defendant.

*Objective Prong - §547(c)(2)(B)*

In considering the "objective" prong, "[a] payment is 'according to ordinary

business terms' if the payment practices at issue comport with the standard of the

industry." . . . [i.e.] we compare the credit arrangements between other similarly situated

debtors and creditors in the industry to see whether the payment practices at issue are

consistent with what takes place in the industry."  *Gulf City Seafoods, Inc. v. Ludwig*

*Shrimp Co., Inc. (In re Gulf City Seafoods, Inc.),* 296 F.3d 363, 368 (5th Cir. 2002).[23]

However, consistent does not necessarily mean identical.  *Id.*  "The creditor should

provide evidence of credit arrangements of other debtors and creditors in a similar

market, preferably both geographic and product."  *Id.*  This might encompass evidence of

credit practices between suppliers to whom [the purchaser] might reasonably turn . . .and

---

[23]  *See also Gasmark Ltd. Liquidating Trust v. Louis Dreyfus Nat. Gas Corp. (In re Gasmark,*
*Ltd.)*, 158 F.3d 312, 317 (5th Cir.1998) [court should examine the "customary terms and conditions used
by other parties in the same industry facing the same or similar problems."].

firms with whom [the purchaser] competes for customers.  At some point the court must

satisfy itself that there exists some basis in the industry practices from which the credit

arrangement at issue can be authenticated.[24]  "[T]he ultimate question is simply whether a

particular arrangement is so out of line with what others do that it fails to be 'accordingly

to ordinary business terms.'"[25]

In light of those standards, a genuine issue of material fact exists as to whether the

transfers were "made according to ordinary business terms" under §547(c)(2)(B).  In his

affidavit supporting the Defendant's response, the statements of Mr. Bain regarding the

financial practices incumbent in complex construction in the oil and gas industry were

generic in nature.  The Trustee contends that, because no specific evidence was tendered

regarding the credit arrangements between other similarly situated debtors and creditors

in the industry, it is insufficient to meet the objective test.  That again might be true at

trial, but we are not yet weighing the evidence on a preponderance scale.  The Court

concludes that it is sufficient to raise a genuine issue of material fact under the objective

prong of §547(c)(2)(B).  Thus, as to the two alternative ordinary course defenses raised

by the Defendant, the Trustee's motion for summary judgment must be denied.

The final defense offered by the Defendant in its answer pertains to its affirmative

defenses for setoff and recoupment.  There is a split of authority, with no controlling Fifth

---

[24]  *G.H. Leidenheimer Baking Co. v. Sharp (In re SGSM Acquisition Co., LLC)*, 439 F.3d 233, 240 (5th Cir. 2006).

[25]  *Id*. at 369.

**-21-**

Circuit precedent, as to whether setoff or recoupment is available in a §547 preference action.  *Compare Kmart Corp. v. Uniden America Corp. (In re Kmart Corp.)*, 318 B.R. 409, 417 (Bankr. N.D. Ill. 2004) [holding that "setoff or recoupment is not a legally sufficient defense to a preference action that would bar recovery of a preference claim" since they "are not among the enumerated exceptions and are contrary to the purpose of empowering the trustee to recover preferences."] and *Gonzales v. Food Mktg. Group (In re Furr's Supermarkets, Inc.)*, 320 B.R. 1, 6 (Bankr. D.N.M. 2004) [holding that §547(c) "is the exclusive list of defenses available to preferential transfers" and "[s]ection 547(c) makes no mention of recoupment, so it cannot serve as a defense."]; *with Durham v. SMI Industries Corp*.,  882 F.2d 881, 882 (4th Cir. 1989) ["Where a pre-petition setoff is asserted in defense to a proceeding brought by a trustee the court must first determine whether the setoff is valid under section 553.  Only if the court finds the setoff invalid, and further concludes that no right of setoff exists in bankruptcy, is section 547 applied"].  However, notwithstanding that legal controversy, summary judgment on those two defenses is inappropriate because the Trustee did not challenge those defenses in his original motion for summary judgment, though they had been asserted in the Defendant's amended answer filed three months prior.  Accordingly, any challenge that the Trustee might wish to offer to them in the summary judgment context is precluded.

-22-

**Conclusion**

Based upon due consideration of the pleadings, the proper summary judgment evidence submitted by the parties, and the relevant legal authorities and for the reasons set forth above, the Court finds that the Motion for Summary Judgment filed by the Trustee-Plaintiff, Daniel J. Goldberg, should be granted in part and denied in part.  The Trustee has met his burden to demonstrate that there is no genuine issue as to any material fact as to the presence of the elements of a preferential transfer under 11 U.S.C. §547(b). However, a genuine issue of material fact exists regarding the following affirmative defenses of the Defendant, Graybar Electric Co., Inc.:  (1) whether the preferential payments are protected from avoidance pursuant to 11 U.S.C. §547(c)(2)(A) because they were tendered by the debtor to the Defendant in the ordinary course of business between those two parties; (2) whether the preferential payments are protected from avoidance pursuant to 11 U.S.C. §547(c)(2)(B) because they were tendered by the debtor to the Defendant according to ordinary business terms; and (3) whether the Defendant is entitled to any offset or recoupment that would reduce any amount that might otherwise be owing to the Plaintiff-Trustee.  An appropriate order shall be entered that is consistent with this memorandum and a separate suggestion of cause for withdrawal of reference shall be tendered to the district court regarding those matters remaining to be tried before a jury.

Signed on 02/14/2012

THE HONORABLE BILL PARKER
UNITED STATES BANKRUPTCY JUDGE

-23-